IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MELISSA PEAK, daughter and next of kin of the deceased, DANNY EUGENE SHERRILL,<br><br>    Plaintiff,<br><br>v.<br><br><br>CUMBERLAND COUNTY, TENNESSEE, et al.,<br><br>    Defendants. | ) <br> ) <br> ) NO: 2:09-cv-0065 <br> ) <br> ) JUDGE TRAUGER <br> ) <br> ) MAGISTRATE JUDGE GRIFFIN <br> ) <br> ) JURY DEMAND <br> ) <br> ) |

## ~~PROPOSED~~ INITIAL CASE MANAGEMENT ORDER

A.    JURISDICTION: Venue is proper in this venue pursuant to 28 U.S.C. § 1391, as all the Defendants are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district. Jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. Section 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Accordingly, this Honorable Court has jurisdiction over all of the claims asserted herein.

B.    BRIEF THEORIES OF THE PARTIES:

1)    PLAINTIFF:

On June 5, 2008, an arrest warrant was issued for Danny E. Sherrill to be taken into custody to appear before the judge of General Sessions Court for the County of Cumberland to answer the State on a charge for contempt of court. On June 12, 2008, the Cumberland County Sheriff's Department arrested Mr. Sherrill for failing to appear in court on the charge of driving without a driver's license and incarcerated him at the Cumberland County Justice Center in Crossville, Tennessee, and Mr. Sherrill was in the

custody thereof at all relevant times to this Complaint. The Decedent was serving a ten (10) day sentence for Failure to Appear.

At the time of this arrest, the Decedent was on Disability due to back problems, a heart condition and high blood pressure and the Decedent was on medication to treat his heart condition and high blood pressure. On June 13, 2008, Maxine Sherrill dropped off medication for the Decedent, as is reflected on the Arriving Medication Chain of Custody Sheet.

As reflected by the Cumberland County Sheriff's Department Medical Information, the Defendants were aware that Mr. Sherrill required medicine for his medical conditions. Mr. Sherrill signed a Medical Clinic Release of Information and Certification giving his permission to release any medical information necessary to the Cumberland County Justice Center for "continuance of medical care during incarceration."

Although the Decedent complained that he was ill and getting worse without his medication and requested his medication to treat his heart condition and high blood pressure, the Defendants willfully refused to allow the Decedent medical treatment or access to his medication. On June 14, 2008, at 17:10, the Cumberland County Justice Center put Mr. Sherrill on Medical Watch, placed Mr. Sherrill in cell #159, gave Mr. Sherrill a suicide blanked for warmth and monitored his condition.

On June 14, 2008, according to the Medical Watch filled out by the Cumberland County Justice Center, Mr. Sherrill was observed by Officer W. White at 17:50 lying down in his cell. On June 14, 2008, at 17:50, according to the Jail Incident/Supplemental Report, "inmate Danny Sherrill called from cell 226 to Tower

C.O. Milstead and asked to be moved to intake because he was starting to go through delirium tremens. Inmate Danny Sherrill was taken from cell 226 by C.O. White to the clinic."

On June 14, 2008, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer C. Simpson observed Mr. Sherrill in his cell "laying down — appears asleep," at 18:25, 19:00, 19:35, 20:05, 20:40, 21:15, 21:50, 23:05, and 23:45. At 22:25 Officer C. Simpson notes that Mr. Sherrill used the restroom. Officer C. Simpson makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently. On June 15, 2008, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer A. Iles observed Mr. Sherrill in his cell "laying down — appears asleep," at 00:15, 00:55, 01:25, 02:05, 02:35, 03:00, 04:00 and 05:00. At 03:35 Officer A. Iles notes that Mr. Sherrill was standing at the door. At 04:15 Officer A. Iles notes that Mr. Sherrill was walking around in the cell. At 05:30 Officer A. Iles notes that Mr. Sherrill was sitting up eating breakfast and at 05:50 Mr. Sherrill was laying down. Officer C. Simpson makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently.

On June 15, 2008, at 06:05, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer B. Milstead "picked up trays, gives tissue." Officer B. Milstead makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently. On June 15, 2008, at 06:30, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer M. Hamby noted that Mr. Sherrill was "lying down." At 07:20 and at 08:15, Officer M. Hamby noted that Mr. Sherrill was "standing in door." At 09:00 and at 10:00, Officer M. Hamby noted

that Mr. Sherrill was "lying down." Officer M. Hamby makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently. On June 15, 2008, at 11:00, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer B. Milstead noted that Mr. Sherrill was "fed meal — seems to be doing ok, starts eating." At 12:05, Officer B. Milstead noted that Mr. Sherrill was "talking at door." Officer B. Milstead makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently.

On June 15, 2009, at 11:45 a.m., relatives of the Decedent attempted to visit Mr. Sherrill at the Cumberland County Justice Center, however, they were told that Mr. Sherrill was too ill to receive visitors and did not want any visitors. These statements conflict with the Medical Watch notes made by the Defendant Officers, which indicate that Mr. Sherrill was in his cell and not suffering from any type of illness or other conditions which would prevent him from seeing visitors.

On June 15, 2008, at 12:45, 14:14, 14:50 and 15:30, according to the Medical Watch filled out by the Cumberland County Justice Center, Officer C. Hennessee noted that Mr. Sherrill was "lying down." At 16:15, Officer C. Hennessee noted that Officer W. White "attempted to feed IM Sherrill and he was throwing up in the toilet." At 16:40, 17:20, 18:00, 18:30 and 19:00, C. Hennessee noted that Mr. Sherrill was "laying down and appears asleep." Officer C. Hennessee makes no mention of abrasions to Mr. Sherrill's head or that Mr. Sherrill was behaving incoherently. On June 15, 2008, at 05:50, the Cumberland County Jail Log indicates that Mr. Sherrill was in cell #159 and had delirium tremens, but there is no mention of abrasions to his head or that he was behaving incoherently.

According to the Jail Incident/Supplemental Report drafted on June 15, 2008, at 19:15, Officers Boots and Iles were "doing the walk around check on the inmates in intake and found inmate Danny Sherrill with abrasions to his head and acting incoherent." . On June 15, 2008, at 19:15, Mr. Sherrill was taken to clinic to check his vitals. On June 15, 2008, at 19:30, Mr. Sherrill was taken to the emergency room due to his vitals and abrasions on his head. On June 15, 2008, at 21:28, Mr. Sherrill was admitted to the Cumberland Medical Center. On June 25, 2008, Mr. Sherrill was pronounced dead at the Cumberland Medical Center.

The Decedent, Sherrill, posed no threat to the guards, supervisors or other inmates and had no history of violence against anyone. As such, any use of force against Mr. Sherrill while he was in custody would have been unreasonable. Plaintiff's causes of action in this matter arise from an encounter(s) between Mr. Sherrill and the Defendant officers or other persons under the control of the Defendant officers during his incarceration during which Mr. Sherrill suffered blunt force trauma to his head and torso while in the custody of officers of the Cumberland County Justice Center that required extensive hospitalization and ultimately resulted in his death.

The Plaintiff, Ms. Peak, makes the following allegations based on the review of all available records and an investigation, expressly reserving the right to amend these pleadings upon the discovery of additional information due to the lack of complete records and information and the fact that Mr. Sherrill was unable to provide his version of events prior to his death. Further, the F.B.I. has taken possession and control of the documents and information relevant to this matter and the Plaintiff has not had access

to said information or documentation as the F.B.I. has not made said information and documents available for inspection and review.

An autopsy was conducted on Mr. Sherrill by the Tennessee Department of Health, Office of the Chief Medical Examiner. As a result of the autopsy conducted on Mr. Sherrill, it was determined that the cause of Mr. Sherrill's death was due to complications of blunt force injuries to the torso and the circumstances of death were sustained blunt force injuries to the torso by an unknown mechanism. Accordingly, during the Mr. Sherrill's incarceration, the Individual Officer Defendants either directly inflicted the blunt force injuries to Mr. Sherrill which led to his death or the Individual Officer Defendants failed to protect Mr. Sherrill from other who inflicted the blunt force injuries to Mr. Sherrill which led to his death.

Based on the limited records available for the Plaintiff to review prior to the filing of this lawsuit, there is no justification for the use of any force against Mr. Sherrill. Therefore, the Plaintiff avers that the Defendants viciously attacked the Mr. Sherrill and/or allowed others to viciously attack the Mr. Sherrill that caused severe personal injuries which ultimately resulted in his death.

As Mr. Sherrill was in the custody and control of the Cumberland County Justice Center at all times from June 12, 2008, forward, the employees of the Cumberland County Justice Center were either directly responsible for the injuries sustained by Mr. Sherrill or they allowed inmates of the Cumberland County Justice Center to inflict the injuries upon Mr. Sherrill. Further, the limited documents provided to the Plaintiff to review prior to the filing of this lawsuit fail to provide any documentation or explanation

that Mr. Sherrill was injured or received blunt force injuries while in the care, custody and control of the Defendants.

Based on information and belief, Defendants have, by custom and practice, failed to protect inmates at the Cumberland County Justice Center from serious harm and undue risk of serious harm by, inter alia, failing to provide adequate medical care, and failing to provide safe conditions for pre-trial detainees. Defendants have exhibited indifference to the health and safety of Cumberland County Justice Center inmates, in violation of the rights, privileges, or immunities of those inmates as secured or protected by state law.

The injuries sustained by Mr. Sherrill resulted from blunt force and were not self-inflicted. As such, the employees of the Cumberland County Justice Center directly caused the injuries sustained by Mr. Sherrill or they allowed inmates of the Cumberland County Justice Center to inflict the injuries upon Mr. Sherrill and failed to protect him.

From June 12, 2008, through June 15, 2008, Mr. Sherrill was in the exclusive control and custody of the Defendants. Further, the blunt force injuries sustained by Mr. Sherrill that led to his death do not normally occur absent negligence or misconduct. Therefore, the Plaintiff invokes the doctrine of *res ipsa locquitor* in support of her claims against the Defendants for the personal injuries and death of her father, Danny Sherrill.

2) Defendants

None of the Defendants violated Mr. Sherrill's constitutional rights during his incarceration in the Cumberland County Jail from June 12 - 15, 2008.

Mr. Sherrill had been booked into the Cumberland County Jail thirty-eight (38) times before June 12, 2008. He arrived at the jail without any medications. The

morning of June 13, 2008, Butch Milstead allowed the Plaintiff to call a relative to bring his medications to him in the jail. Mr. Sherrill received his medication for hypertension when corrections officers passed out medications the mornings on June 14 and 15, 2008.

On June 14, 2008 at approximately 5:04 p.m., Mr. Sherrill called the jail tower to ask to be taken to the jail's intake area because he was starting to go through "DTs". Mr. Sherrill was taken to the jail's clinic, where his blood pressure and pulse were taken. At 5:10 p.m. he was placed on medical watch in a cell in the intake area. Several officers observed and recorded his activities every 30 to 40 minutes for approximately 26 hours. From 4:40 p.m. to 7:00 p.m. on June 15, 2008, Mr. Sherrill was lying down in his cell and appeared to be asleep. At approximately 7:15 p.m., Officers Terry Boots, Abe Iles and Carl Simpson were in the intake area when they heard a thumping noise coming from the Plaintiffs cell. When they opened the cell door to check on Mr. Sherrill, they found him with abrasions on his head. He was acting incoherently. They placed him in a wheelchair and took him to the jail's medical clinic. Officers called the Jail Nurse, who advised them to take him to Cumberland Medical Center. Mr. Sherrill was a patient at Cumberland Medical Center from June 15, 2008 until his family withdrew life support on June 25, 2008. According to his attending physician, Mr. Sherrill had twelve final diagnoses, including alcohol abuse, advanced liver cirrhosis with ascites, change in mental status secondary to delirium tremens and hepatic encephalopathy, and multiorgan failure. According to an autopsy performed on Mr. Sherrill, he died as a result of a complications of blunt force injury to his torso. The manner of death could not be determined. To the extent that Mr. Sherrill suffered a blunt force injury, it was not the

result of any force used by any of the named Defendants, another jail employee, or another inmate. The Defendants were never deliberately indifferent to Mr. Sherrill's medical needs.

The Defendants rely upon all affirmative defenses raised in their Answer.

C.      ISSUES RESOLVED: Service of Process, jurisdiction and venue.

D.      ISSUES STILL IN DISPUTE: Liability and damages.

E.      INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before November 30, 2010.

F.      DISCOVERY: The parties shall complete all written discovery and depose all fact witnesses on or before May 1, 2011. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 9(a)(2) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

G.      MOTIONS TO AMEND: The parties shall file all Motions to Amend on or before April 1, 2011.

H.      DISCLOSURE OF EXPERTS: The plaintiff shall identify and disclose all expert witnesses and expert reports on or before June 2, 2011. The defendant shall identify and disclose all expert witnesses and reports on or before July 15, 2011.

I.      DEPOSITIONS OF EXPERTS: The parties shall depose all expert witnesses on or before September 15, 2011.

J.      JOINT MEDIATION REPORT: The parties shall submit a joint mediation report on or before May 1, ~~2001.~~ 2011

K. DISPOSITIVE MOTIONS: The parties shall file all dispositive motions on or before July 15, 2011. Responses to dispositive motions shall be filed within thirty (30) days after service. Optional replies shall be filed within ten (10) days after service of the response. Briefs shall not exceed 20 pages. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

L. ELECTRONIC DISCOVERY. The default standard contained in Administrative Order No. 174 need not apply to this case.

M. ESTIMATED TRIAL TIME: The parties expect the trial to last approximately 5 days.

It is so ORDERED.

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY:


By: /s/ Andrew C. Clarke
    Andrew C. Clarke, #15409
    6250 Poplar Avenue, Second Floor
    Memphis, Tennessee 38119
    (901) 590-0761
    (901) 590-0779 (fax)
    Attorney for Plaintiff


DICKINSON WRIGHT PLLC

By: /s/ Jeffrey M. Beemer
    Jeffrey M. Beemer, #17247
    Fifth Third Center, Suite 1401
    424 Church Street
    Nashville, TN 37219
    (615) 244-6538
    (615) 256-8386 (fax)
    Attorneys for Defendants